for the second district is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Anne B. Jorgensen and Justice George Bridges. The case is No. 2180591, People of the State of Illinois, Plaintiff-Appellee v. Darwin M. Beals, Defendant-Appellant. Arguing for the Appellant, Amaris Danek. Arguing for the Appellee, Elizabeth Romano. Thank you. Counsel, you may proceed. Thank you. May it please the Court, Counsel, my name is Amaris Danek from the Office of the State Appellate Defender. I represent the Defendant-Appellant, Darwin Beals. In this case, the State told the jury, ladies and gentlemen, it's as simple as that. .09 is higher than .08. That's how they argued it. They said to the jury, look, it's a common sense argument. And yet, in this case, because of the judge's ruling in the motion in limine, the defense was not allowed to do the same. They were not allowed to make a common sense argument, drawing an alternate conclusion. This issue was simple enough for the State to argue that it was simple, but it was too complicated for the defense to challenge that. This is the crux of this case. A defendant should have every opportunity to present evidence which might tend to create doubt as to guilt. This case is about the most basic right to present a complete defense, including the right to present evidence and the ensuing right to argue a reasonable inference from that evidence. The State brings up this issue of retrograde extrapolation. The definition of retrograde extrapolation is that it's a scientific mathematical process used by chemists and toxicologists to estimate what a person's blood alcohol concentration was at a specific moment in time based on test results obtained at a later period of time. This case is not about retrograde extrapolation. The defense never sought to introduce any estimation of what his blood alcohol content was at a specific time. That's because it wasn't the defense's The State distilled their argument down to the simple math that .09 is greater than .08, therefore he is guilty. The State had no idea what Mr. Beal's actual blood alcohol concentration was while he was driving. The State based their case on an inference, an assumption the jury was going to make. They were going to draw from the .09 breathalyzer given an No one was in the car with Mr. Beal while he was driving, giving him a breathalyzer test at the time he was driving. And that was what they had to prove based on the statute. The State didn't have an expert either to make an actual backward calculation to say to the jury, hey, his blood alcohol concentration was X. Therefore, they had to have the jury make that inference. And they suggested it was simple. .09 is higher than .08. But had the defense been allowed to introduce the .08 roadside test given 10 minutes after Mr. Beal had stopped and argue an alternate inference based on that test, the State's simplistic explanation would have been called into question. Instead, they were allowed to argue, ladies and gentlemen, it's as simple as that. But this is really misleading because in reality, as the trial court pointed out, it wasn't actually as simple as that. In the motion in limine, in their ruling, the court said who knows whether the concentration was rising or falling or staying the same or falling and rising or going every which way. And yet, the trial court's complexity that might be present, premise its argument on the idea that his guilt was as simple as the fact of that .09 breathalyzer an hour later. Therefore, he must have been over the legal limit an hour earlier. It should not have been the defense's burden to secure some kind of scientific evidence to prove beyond a reasonable doubt that their alternate inference, that their alternate theory of the case was the one scientifically correct theory. I'm going to sound kind of like a broken record, but the burden was on the State. They had to prove beyond a reasonable doubt. And so if the State was allowed to distill that argument to a common sense argument, the defense should have been allowed to do the same. I kind of think of that old idiom, what's good for the goose is good for the gander. But the trial court did not allow the defense to raise the inference that they sought to raise. The defense never sought to skirt any of the rules of evidence as the State suggested in its response. The defense never sought to argue that his blood alcohol concentration must have been lower or that it must have been a .07 or a .06 or introduce any kind of scientific calculation or estimation of his actual blood alcohol concentration. They only sought to argue that when there is one test at .08 and one test an hour later at .09, it may have been rising. It was a common sense argument to challenge the State's common sense argument. Here is evidence which might tend to create doubt, tend to create doubt as to his guilt. This is about the right to present a complete defense. This includes the right to present a complete defense. As a final matter, this error wasn't harmless beyond a reasonable doubt. To a jury that single station breathalyzer test result may have been a strong piece of evidence left completely unchallenged when the judge made its ruling on the motion in limine. And so kind of in comparison in the context of DNA testing, courts have noted that DNA evidence is often assumed to have this special aura of certainty and kind of a mystic infallibility. And I would argue that breathalyzer tests are somewhat the same. They're apt to be conceptualized by a jury in much the same way. Thus, to leave the defense unable to counter the State's strongest piece of evidence including hamstrung the defense wasn't harmless error. The State argues in its response this issue is irrelevant to the impairment count which was the actual count Mr. Beals was advised that if they found his blood alcohol concentration above .08 while driving, thus that inference comes into play, they could presume he was under the influence. That's the way that the statute reads, it shall be presumed he was under the influence if they find his concentration was .08 while driving. And in a harmless error analysis, it's the State's burden to prove beyond a reasonable doubt the verdict would have been the same. Because of that there's just really no way to know how the jury ultimately determined his guilt. They might not even have considered the other evidence past the breathalyzer test. This then makes the error not harmless and the court's ruling likely affected the jury's findings of guilt as to both counts. And for those reasons, the trial court erred when it granted the State's judgment. Justice Bridges, do you have any questions? I do. Thank you, Justice McClaren. Ms. Danik, isn't an expert required to lay the foundation that a breath alcohol level of .08 and one taken an hour later to show this linear progression to support defendant's proposed argument that his blood alcohol level was less than .08 at the time of the arrest? No. The reason for that is that the defense was not trying to prove what his blood alcohol content was. It wasn't the defense's burden to say, hey, look at this. It had to be linear. It had to be linear from the time he was driving. It had to be linear to the .09. Therefore, it had to be, .79 or .78. That just was not what the defense was trying to do. Had they tried to do that, had they tried to say, hey, look, it was .07, or give some kind of extrapolation, scientifically based argument, then yes, they would have had to have an expert. But instead, they were simply trying to challenge the State's inference that it's as simple as that. .09 means that he's guilty an hour earlier. The .08 simply called that into question and said, hey, there's an alternate theory here. There's an alternate theory that it may have been rising. It may have been less when he was driving. So that I'm clear, the defense wants to argue that this progression based solely on the isn't that correct? So this would be speculation on the part of the defendant, would it not? I would argue that it's no more speculation than the speculation that the State was calling on the jury to make. Essentially, whether it's speculation or some kind of inference, the State needed the jury to believe that the .09, that his blood alcohol concentration would have been at least .08 while he was driving. It must have been either staying the same it may have been falling. The State put up this idea that required some kind of inference, assumption, speculation on the part of the jury. And so with regard to what the defense should have been allowed to do, it's understood that a party against whom an adverse inference has been drawn should be allowed to argue that the inference was inappropriate. And so in that sense, it's no more speculation than what the State was already requesting the jury to do based on their argument that it was a simple issue. It could be simply resolved with this single breathalyzer test an hour later. And Ms. Danek, the sole issue when I read your brief that was raised is that the court prevented the defendant from presenting a defense by not allowing him to argue a reasonable inference on this per se charge. But didn't the defendant, in fact, get to make that argument? I'm sorry, in what sense? In the sense that, for example, the record that we have on page R290, the defendant was able to level between the two tests coupled with the 10% margin of error created reasonable doubt. So isn't this, in fact, he was allowed to make that argument, which is the sole issue before this court? Your Honor, that's actually a different argument. And it does not allow the defense to present the had they been allowed to raise the 0.08 and argue the inference, then that margin of error would have been that much more compelling to the jury. This is about really a criminal defendant being entitled to have that jury consider any theory of the defense. And that's the case U.S. versus Cheek, that they should be allowed to consider any theory supported by law, which has some foundation in the evidence, however tenuous. And so while they may have been able to challenge the state's theory in this limited fashion of saying, hey, there could be this margin of error, that does not at all get them to the point of being able to really effectively call into question this breathalyzer test and the potential weight that the jury is going to give this test. Thank you, counsel. Justice McClennan, I have no further questions. Thank you. Justice Jorgensen, do you have any questions? Thanks. Perhaps I'm beating a dead horse here, but precisely what was it that you wanted to argue to the jury? Yes. So the defense wanted to argue to the jury that because there was a .08 test given at the roadside 10 minutes after he was pulled over and a .09 result an hour later, his blood alcohol concentration may have been rising, thus it may have been less than that .08 while he was driving. But once you begin to suggest that a blood alcohol is either going up or down, isn't that in effect extrapolation? No. Because the extrapolation is a scientific and seeks to give an estimation of what a blood alcohol concentration was at a given point in time. And the defense never sought to argue that his blood alcohol concentration was a .78 or a .79 or based on the dinner that he had beforehand, he probably wasn't intoxicated or that there was any kind of scientific attempt to state that this is exactly what his concentration was. It was simply an attempt to counter the state's inference that they were trying to get the jury to make, to argue an alternative inference, not that it had to be rising, not that it must have been rising, not that it couldn't have been going up and down in every which way, but simply to that the .09 was definitive and assured his guilt. Okay, but that was not the question I asked you. Extrapolation, once you begin to argue a trend, isn't that in effect extrapolation? Or is it your position that extrapolation is only requiring an expert when you want to pinpoint a blood alcohol? Yes. Our position is that you really only require an expert when you're basing it on some kind of scientific evidence, something that's out of the can of a reasonable juror to infer. Yeah, but again, here's what I'm trying to tease out here. Sure. Your position is you only need an expert if you're going to say 10 minutes prior to his stop, his blood alcohol must have been a 7.8 or a 7.6 or a 7.5. That's when you need extrapolation and an expert. Is that correct? Correct. But explain to me what the difference is between saying that the trend must have been going down and not extrapolation. Aren't you in effect saying, well, it had to be something less than an 0.8, and I don't see the difference between that and extrapolation. Sure. Let me try. I think I understand your question now. Thank you for being patient with me. The defense was never saying it must have been this way. The defense was never saying it must have been rising. The defense was trying to challenge the state's inference. They were trying to say it may have been rising. This is evidence that might tend to call into question the state's position, not that it must have been rising, not that it had to have been less than 0.08, but just to call that inference into question. Is that answering your question? It does, but here's the point. If you begin to say it's rising or it's falling, there was no evidence presented to suggest that. In other words, there were two snapshots, but you don't know whether it was going up or going down between those snapshots. Correct. And the trial court based its decision on it, but no one is linear. But neither did the state have any scientific evidence to base its position on. The state didn't have anything to suggest what his blood alcohol concentration actually was while he was driving. And so what... The court didn't keep out the state's evidence. The issue was whether or not he should have allowed you to argue. Correct. And when the state was allowed to argue that it was as simple as the fact that the 0.09 was greater, and the state wasn't allowed to present any evidence that tended to even indicate that it may not have been that, tended to call into question the doubt of his guilt, that was the error by the trial court. It can't be on the one hand so simple that the state can make their argument, which was allowed by the court, and yet it was so complicated that the defense couldn't even call into question the certainty with which the state presented their argument. Okay, answer. The quote that you've made a couple times attributed to the state, was that in their opening closing argument or their rebuttal? That was in their closing argument. I know, but was it in their... or in their rebuttal? Sure, if you give me one moment I can certainly find that for you. I apologize, give me one minute. Take your time. Okay. You know, I'm not seeing that offhand in my notes. I would be more than happy to supplement and get that back to you. In their opening or their first closing argument, did you attempt to make the argument in response to the state's argument? Yeah, so the offer of proof that the defense had made earlier was that had they been allowed to introduce the .08, you know, had they been allowed to argue the inference, they would have introduced that .08 test result. And so presumably the defense would have then made that argument. Okay, but my point is, did you, was there any attempt, assuming that the state made that argument in their first opportunity for closing argument to the jury, was there an overture by the defense to say, hey, they've argued it now in closing, I should be able to respond to that trial court's ruling on the motion in limine, would have prevented them from arguing that there was a potential that it could have been rising? No, but the question is, did they attempt to renew it and say, now the state has opened the door, or now they've made their argument, you should be able to respond to it. I don't believe so. They renewed the objection made during the motion in limine. This was in the record of page 245. And so they, I know that they renewed it several times. They renewed it, this was right after Trooper Williamson's direct examination. But Mike, it was just about whether at the time the argument that you really are hanging a lot your argument on, the state made that argument, my point is, did anyone then say, all right, Judge, whether we should have been able to make these arguments earlier or not or introduce things, whatever, now the state's opened the door, shouldn't we be allowed to do it? That was my question. And it's okay, too. I'm sorry, go ahead if you had something you wanted to add. No, no, that's okay. I was just going to point out earlier that the defense made a very specific offer of proof in order to preserve the issue. I know at one point it was on page 245. They brought that up. I do not believe that they brought it up in the middle of closing arguments, just based on my recollection of the transcript. But it was after Trooper Williamson gave his trial testimony, the defense made the offer of proof outside the presence of the jury that, and Judge Coco noted the defense counsel's continuing objection to the court's ruling and noted for the record that had he ruled differently on that motion in limine that the defense would have presented that evidence of the portable breathalyzer, and then presumably been allowed to argue that inference in closing. Thank you. How do we know that the metabolism or the static, or whether it is not static insofar as blood alcohol level, how do we know whether it rises, falls, or remains linear and then just disappears? We don't know. We don't know. We know supposedly because experts get on the stand to tell us that it does. Do they not? Yes. Yes, they do. In order to lay a foundation for the premise that it is even possible, or in the reality of this world, that you will have a rise or a falling trend, has to be established by an expert because I can't, if I were the trial judge, well, I can't tell you how much of that is speculation. But you're almost begging the question to the extent that the premise that you're raising is based upon a scientific theory that is established by expert testimony. And so without the expert testimony, it's pure speculation for so to what extent. And that's what Justice Jorgensen was circling around like Indians attacking a wagon train, is that your premise is that if things rise or fall, the jury is supposed to be able to take that into consideration. And the point is, is that without expert testimony, we don't know what that means. We don't even know if it's valid. So do you see the problem with your argument that you need an expert to establish the existence of the theory that there is such a thing as diminution of blood levels over time? Your Honor, if I may respond to that, just with regard to the foundation issue. When the state called Trooper Williamson to the stand, he did testify that blood alcohol concentration is a dynamic state, it's not static, and that it changes over time. So no, there was no scientific evidence presented by either the state or the defense saying that it had to stay the same, that it's dynamic, that it goes every which way. And yet the trial court seemed to put the burden on the defense to say you needed to have brought in this scientific expert in order to prove your case. When Williamson laid that sort of basic idea, that basic foundation in the minds of the jury, presumably that it's a dynamic, it's not static, it could change. He didn't say how it could change. He didn't say which way it could go. He didn't say it's staying the same or going all over the place. And yet the state's argument in closing was that it's the crux of the argument is really that the defense should have been allowed to introduce that .08 and argue the alternate inference. It's not that simple. Even based on the state's own witness, it can change. And this is one suggestion of the way it might be changing. This calls into question the idea if it's built based on that sole .09 breathalyzer from an hour later. And so that's kind of the crux of the argument. There was a paucity of any kind of scientific evidence in this case. That's understood. We absolutely understand that. But it should not have been the burden on the defense to produce that scientific basis. You don't have to prove. It's not your burden necessarily to establish what the level was, but it's your burden to prove that the theory is viable. Sure. And the defense's theory is no more or less viable than the state's theory that they were allowed to argue. In fact, it's potentially more viable because they're using two points in time as opposed to simply the one breathalyzer test. And that all goes to the weight of the evidence. It all goes to what might be in the minds of the jury in terms of are they just going to think it's as simple as that .09, or can they take a look at Williamson's testimony and say, hey, it might have been changing. And based on the difference between these two numbers, it might have been changing and going up. And that's all the defense was trying to say. I have no further questions. Does the panel have any questions in response to the questions asked after they ask questions? I do not. I have no further questions. Thank you. Thank you. Counsel, you'll have an opportunity to make rebuttal. Thank you. Thank you. Counsel, you may proceed with your refutation, rebuttal, reply. Hello? Elizabeth, are you muted? I'm waiting for the Appalachian Council or the State's Council to make argument. Hello? Hello? You're very, at least to my earphones. Now you're much louder. Thank you so much. My apologies. Good morning, Your Honors. Elizabeth Romano, E-L-I-Z-A-B-E-T-H, Romano, R-O-M-A-N-O. On behalf of the people of the state of Illinois, Robert Berlin, and the DuPage County State's Attorney's Office for the appellee. May it please the court. As outlined in our brief, I'd like to touch on three points. First, the defendant appellant's argument is barred from appeal. Second, the defendant was permitted to argue retrograde extrapolation so long as he laid the proper foundation to do so. And third, any error in this case was harmless. The defendant was found guilty of the D-Y-A-1, the per se count, and the D-Y-A-2, the impairment count. And he was sentenced to court supervision on the A-2 impairment count. This court should not rule on the defendant's issues because he was never convicted of driving under the influence of alcohol. And he was not sentenced on the A-1, the per se count. Nonetheless, if your honors accept the defendant's argument of retrograde extrapolation, he'd have to call a witness. Now, opposing counsel did give the definition of retrograde extrapolation. It's a scientific process typically used by toxicologists to opine on what a person's blood alcohol content was at a specific time based on test results obtained later in time. And at trial, the defendant raised issue with the trial court's evidentiary ruling, saying that foundation was not required to argue a scientific method. But the trial court used its broad discretion to admit evidence when it said, you can argue retrograde extrapolation as a defense that he was under 0.08 when driving, so long as you call an expert. This was not an unreasonable ruling because it's not a reasonable inference. And history supports the trial court's position. Illinois case law is clear. It's consistent. Retrograde extrapolation of past blood alcohol content is a complicated scientific matter that requires expert testimony. Factors like age, weight, alcohol tolerance, type of food the person's eaten, type of alcohol consumed, the length of time he was drinking, the time between his last drink and the test, the way and to what extent those factors impact a person's absorption and elimination of alcohol, that's not common knowledge. And that's why the trial court was correct when it required the foundation for a defendant to argue this complex scientific process. And Justice Jorgensen touched on this. Just because the defense counsel was labeling it as a trend doesn't mean that he wasn't trying to argue retrograde extrapolation. I mean, he was not trying to pinpoint the defendant's BAC while he was driving, but was relying on a substantially similar scientific basis that's necessary to conclude what the defendant was calling this upward trend. The defendant's blood alcohol concentration was a .09 at the station. And our argument on the A1 the per se count, it was three. And I would direct your attention to the record pages are 283 and on rebuttal are 295. .09 is higher than .08. That's a fact that required no scientific explanation. And we didn't argue a scientific method to prove our A1 per se count. Case law is well settled that we may use the breast test as circumstantial evidence to prove that a defendant was driving with the BAC of .08 or greater and that the timing of the test goes to the weight viewed in light of the surrounding circumstances. Here we had a .09 at the station. Now, defendant was free to introduce and argue his own circumstantial evidence, but he didn't call an expert for whatever reason. And without calling an expert, the only evidence that the defendant was not allowed to admit was opinion testimony and arguments that required the jury to estimate the defendant's blood alcohol concentration at the time he was driving. With that choice, he relied on his cross-examination to argue the fact that created reasonable doubt. When he cross-examined Trooper Williamson, and I believe Justice Bridges mentioned this, he was able to create that. He attacked the reliability of the BAC results. He pointed out that the results were from almost an hour after being pulled over. And he argued that fact, the possible 10% deviation, and that the alcohol levels change even over a short period of time. But despite this argument, the jury believed beyond reasonable doubt that the defendant was guilty on both counts. Now, even if your honors accept the defendant's argument that any error was harmless, the evidence showed beyond reasonable doubt that the jury would have come to the same conclusion, absent error, that the defendant was under the influence of alcohol. Three o'clock in the morning, the defendant was speeding in front of a fully merged squad car, bad driving, that the jury had the opportunity to see, delayed reaction to the emergency light, not knowing what time it was when he was pulled over. And we had a credible trooper testifying to a strong odor of alcoholic beverage coming from his breath, poor performance on his field, and admission to drinking. The jury found those while impaired. And the additional evidence of the defendant blowing a .09 at the station does support that he was a .08 or greater at the time he was driving. The people would submit that these issues, they're not appealable before your honors. But if you do consider them, the trial court did not abuse discretion when it required the defendant to lay the foundation through an expert. We ask that you uphold the trial court's ruling. Thank you. Thank you. Justice Bridges, do you have any questions? I do. Thank you, Justice. Ms. Romano, my question is, isn't there a difference between an expert using retrograde extrapolation to opine that someone's BAC was above or below a certain level, and someone arguing that you can infer from the increasing BAC that his level was on the rise? Well, I think what the difference is, is what the reasonable inference is. I don't think a common person would know that. And I, the judge does make reference to that in arguing the motions in Lemonet when he discusses what the reasonable inference is. And he does give a parallel to that understanding of what the reasonable inference a jury could make in this situation without the expert. And he gives that example of, and I'm looking at the records, R90, about the sun shining. He said that you don't need an expert to say that the sun comes up, but you need an expert to say that the sun shines so brightly. And I think that's the difference between what the, what would be required for the defendant, the jurors to make a reasonable inference as compared to what would be needed for an expert. But, you know, in other words, if a person's BAC is rising or falling, that's an inference for the jury to draw, is it not? Yes, Judge. And in this case here, did defendant have an opportunity to make that argument in closing arguments? Yes, he did. And I would note that that opportunity was also discussed at length, and it was clearly demonstrated throughout the record that he understood that he had that opportunity. He could have introduced the .08, and at first, at the beginning, there was a motion to suppress. He was able to suppress the .084 PBT. He later decided that it might be something that he wanted to enter into evidence, but he ultimately chose not to. And there was a discussion about that, entering it, that you could introduce that to just generally call into question the one hour. You have two different numbers. How reliable is this? So I would submit he absolutely did have that opportunity, and not only did he have it, he understood it and made a strategic decision to not argue that. Well, the judge cautioned him about the wisdom of making that argument, did he not? He did. All right. Thank you, Ms. Romano. I have no further questions. Thank you, Justice McClure. Thank you. Justice Jorgensen, do you have any questions? Would you agree that when you argue to a jury that at 56 minutes past the stop, a breathalyzer reading of .09, you are asking the jury to, in effect, agree that his blood alcohol was therefore over an .08 and nearly an hour earlier? I would not agree with that. I don't think we're asking the jurors to use a scientific process. I think we're asking them to use their common sense. And we don't have to put on an expert to prove common sense. But in contrast, what they're doing is arguing against common sense. So I think in that context, that's when the expert would be required. So your position is you're just asking people to, jurors, if it's an .09 now, it must have been over an .08 then? What we're asking the jurors to do is to look at all of the evidence. We're not simply focusing on the breathalyzer. Sure, we submit that. Excuse me. If you would just limit your response to the per se count. That's what I'm talking about. Yes, Your Honor. I will note that with respect to the per se count, I think that in addition to that, you need the A2 analysis, the impairment analysis to verify the analysis of the A1. I think that it's important and vital for the jurors to be able to take into consideration the circumstances. And I say that so they can use their common sense to determine if they believe that the breathalyzer reading would, in their opinion, reflect his impairment level. Okay, but here's the question. The question is this. Aren't you asking the jury to take an .09 breathalyzer result an hour after the stomp and look back an hour and say, well, then it must have been over an .08 then. I mean, otherwise, why are you introducing the blood alcohol an hour later? You don't have a blood alcohol at the time of the stop. The best you have is circumstantial evidence an hour later, 56 minutes. Yes, Your Honor. Do you want the jury to look at that and say, well, because what we have to prove as the state is that it was over an .08 at the time he was driving, right? Yes, Your Honor. And I would agree that that is the best evidence that we have. We're not allowed to bring in the PDT on our own. The defendant chose not to, so we didn't argue that. I would say that shy of having an average person simultaneously blow into a installed breathalyzer in the car the entire time they're driving. I appreciate that we don't do that. We don't have breathalyzers in every car. My point is that the reason you entered into evidence the .09 is to make the inference that he was over an .08 an hour earlier, right? I mean, isn't that the point of a per se violation? Yes, Your Honor. And we did introduce that. Why is it inappropriate then that the defendant can't argue the opposite inference? They would not be able to argue it because it's not a reasonable inference. Well, reasonable or not, the court did not decide it was not a reasonable inference. Court decided you can't argue it at all. Yes, Your Honor. And the basis for that and why I believe that it would not be reasonable to argue the inverse is that there are a lot of factors that would contribute to that and to what extent a person's BAC might be rising or falling. And the very nature of that would be based in that scientific method. But my point is what defense is arguing is that you take an .09 an hour later and say that means he was over an .08 an hour earlier. But by the same token, the state can't argue, okay, he was an .09 then, but that doesn't mean that he was over an .08 an hour earlier. In other words, you use the circumstantial evidence to establish one of the elements. But here the trial court said defense, you can't use the same circumstantial evidence and make it a counter argument. And I don't understand why that's fair. Well, I would submit, Your Honor, that they did have the opportunity to do that. They could have introduced the PBT of the .08 and made the argument that there is two, we have two numbers here in the course of an hour. How reliable is that? I understand what they could have done, but what they asked to do was simply make the inverse argument. And why is it that the defense should be precluded from simply making the inverse of the argument that the state makes? I believe that the people were very pointed in how they used the .09 in argument. The statements that were made in the opening close in the rebuttal were that this is a fact that an hour after he was driving, he was a .09. Take that into consideration with the other things that you saw. So I think that when we argue, it's as simple as that. It's as simple as what the breathalyzer said an hour after. Take that with the evidence that you have to make your decision. Okay. I have no further questions. Thank you. Ms. Romano, why is it that the state isn't allowed to admit into evidence the PBT? The defendant, it's up to the defendant whether or not he wants to. I know that it's up to the defendant. My point is, what's the rationale? What's the reason for disallowing the state to present it? Normally, the point that I'm making, and I'd like you to expand on it, is a fact is a fact. And if one side can present it, I mean, this is what the defendant is arguing. If the state can make the argument, then why can't the defendant? And I'm asking you a similar question relative to the admission of the on-site test. What is the reason why the state couldn't have presented the eight and not presented the nine? And then there would be no issue about extrapolation unless the defendant put up the nine, but then put up some expert to explain what the relevance is between eight and nine. Yes, your honor. I think in that case it would be too prejudicial. The PBT, the reason why the state can't admit into evidence the PBT is because it's prejudicial as opposed to not reliable? As opposed to the defendant wasn't given the opportunity to refuse? Do you know what the reason is or the reasons are? In this matter, this was discussed in the initial motions and lemonade hearing, specifically to the point that you were discussing that he didn't have the opportunity to refuse. In this situation, that was the case, why it was essentially the motion to suppress was granted. So in this situation, I would say that that would be the case. So reliability for the PBT is an equivalency for the in-house test? Could you rephrase your question? I'm sorry. Well, the reason you gave doesn't necessarily include or exclude the differences in reliability insofar as the two tests are concerned. For instance, a field test for marijuana may be a lot looser or a lot less reliable or be much more sensitive than the test in a lab. And so my question or the point that I'm trying to get at is whether or not the PBT is less or more reliable or the equivalent. Is there any differentiation between the two that would indicate that one needs a better foundation or a more extensive foundation than the other in as admissible evidence? Thank you, Your Honor. If you don't know, I don't know. I don't expect you to be a scientist. You're a lawyer, not a scientist. Thank you. And I think that's the heart of the issue, Your Honor. To your that we have a distinction. As Triple William testified, there were a number of texts on calibrations to make sure that the results were accurate. Of course, I think that when it's on the street, it's not as reliable as something like that. But to your point, I think that with our familiarity with these types of cases, we get to know the lingo more or less just by being around types of cases like these. However, I don't think that everybody is. And so just as I'm not a scientist and a person that has been around, you know, generally DUI is probably more than the average person as any of us have. I would submit that that is to our point, that it's not common knowledge for people to know about these processes. I don't have any further questions. Does the panel have any other questions? I have no further questions. Thanks. Thank you. Anne? No other questions. Thank you. Thank you, Ms. Romano. Thank you. Ms. Stanek, you have the opportunity to make rebuttal. Thank you. I think I'll just start with the most recent point that the state made and kind of this idea that somehow the initial test was not as reliable. I guess I just want to point out that there isn't anything in the record that would suggest that that would be the case. The defense's motion to suppress was based on a Fourth Amendment violation. The fact that he was not placed under arrest, it was not done incident to arrest, and he was not given the opportunity to decline the breath test. And so that was the basis. I just was less reliable. Therefore, it can't come in. Rather, it was based on a Fourth Amendment violation. The second thing I just wanted to make clear is that, no, the defense did not have the opportunity to make that inference and argue their case in closing. I was able to find, Justice in their opening argument of their closing, in their initial argument for their closing argument. I just wanted to let you know I was able to find that. But the state could not have argued that inference without going directly, or the defense could not have argued that inference without directly going counter to the judge's ruling in the motion in limine. And the judge even pointed out, why on earth would you introduce this 0.08 ruling if I'm not allowing you to argue that right? And so the defense really was precluded from making this argument. You know, I addressed in our reply, this idea that the defense's argument is barred on appeal. Certainly, this argument goes directly to the per se count, but it absolutely affects both counts, based on the presumption that the jury is allowed to make. As to the under the influence, if the jury were to find that at the time he was driving, it was above a 0.08, the jury then can presume that he was under the influence. And so this is not a harmless error, specifically for that reason. We have no idea the weight that the jury gave that evidence that the state presented. And so this entire issue, you know, both of these counts were tried together. The jury found him guilty on both counts. And how much weight they gave that in determining the under the influence, I think is absolutely critical. Because as the state pointed out, there was evidence both ways. Certainly, yeah, there was evidence of some bad driving. But that's exactly the point. There was also evidence that he knew where he was, he didn't swear his speech, he wasn't confused. You know, he was correct about the date, he noted it was in the middle of the night, it had just changed the date three hours prior, there was evidence on both sides. And that's precisely the point. And that the state can't prove beyond a reasonable doubt that this idea that the defense's inability to argue their case on the inference they were trying to make didn't affect the jury's ruling. Finally, I think that the state really is asking the jury to agree that his blood alcohol concentration was over a .08 an hour earlier. That's exactly what they have to prove for the per se count. And again, they're trying him on both these counts. If the state is not expected to prove a common sense argument, why is this a common sense argument for the state? It's common sense because they want to rely, you know, potentially on a lay person's assumption that blood alcohol content may be as highest when you're drinking and then go straight down from there. We don't know what the jury's knowledge is, we don't know what they're thinking. But certainly, the state wants to try to potentially take advantage of this idea that it is quote, common sense, maybe that it just goes straight down or that it stays the same, etc. But that's no more common sense than what the defense is trying to argue, what the defense is trying to bring up and say, hey, just like the state is saying .08 is less than .09, .08 is less than .09, that direction is going up. It's no less common sense than the argument that the state was trying to make. Okay. Let me see. If you can give me one quick minute. We'll give you a long minute, Axel. Thank you. I think that that's all I have, Your Honors, in rebuttal. Thank you. Justice Bridges, do you have any questions? I do not, thank you. Justice Jorgensen, do you have any questions? Justice Jorgensen? No, I'm sorry, I do not. Thank you. Ed? Ms. Danek, correct me if I'm wrong, but 10 minutes after the stop, the test indicated a .08, and an hour later, it was a .09. And assuming that there is a linear retrograde degradation, that means that there was at least a mean average of one quarter of a digit in the right column of a quarter point. And if that's per quarter hour, four quarters times, four quarters equal one point or one digit. And since it was less than one quarter hour from the start, that would mean that at best, the blood alcohol would be .07. And if we're going to go into more significant figures, .75. Is that a reasonable conclusion that a jury might come to? Your Honor, I think it's a reasonable conclusion that the jury could come to, that there's some question, there's some question that it's not as certain as the state wants to suggest. That's more math than I did. And in reality, we don't know how much his concentration went up in those 10 minutes from when he was driving. But at the risk of sounding like a broken record, and I hope I am answering your question. The defense doesn't have to know that because it was the state's burden of proof. The defense, again, was not trying to say this is a directly linear correlation. It went up exactly this amount based on his weight or height or what have you. They were only trying to say, and it is a reasonable thing for the jury to infer, that it may have been increasing based on the trajectory between these two numbers. Well, you claim that this has prejudiced your client, that he couldn't argue without an expert what the amount was, just that there was an amount, an X amount, an abstract amount. And accepting the argument as presented, if it's reasonable to assume that it was a quarter of a digit based upon a linear degradation as opposed to an exponential degradation, then it would mean that the defendant's blood level most assuredly was at least 7.5. And if it was 7.5 plus what the allegations or the factual evidence that was presented, why wouldn't that, beyond any reasonable doubt, establish that impairment actually existed? Which means that what's the harmless error in this situation? Because I think it's unreasonable to accept the argument that because we don't know what the amount of incremental increase is, that the jury could reasonably conclude that the blood alcohol level was 0.01 or 0.02 or 0.03. Sure, if I may. We aren't arguing that the evidence may have been sufficient to convict him. The question as to whether it was harmless error is not about whether there may have been sufficient evidence. There may have been sufficient evidence. But with the harmless error analysis, the state has to show beyond a reasonable doubt the verdict would have been the same. The problem with this is we don't know how much weight that breathalyzer, without being challenged, that the jury might have determined his guilt. They might not have even looked at the roadside test. They might not have looked at the Trouber-Williamson's testimony about how he was coherent and no glassy eyes, etc., etc. There was evidence in this case that cut both ways. And certainly, again, we're not saying, we're not challenging that the state could not possibly have proven this beyond a reasonable doubt. But the prejudice to him is that the nature and the weight that the jury may have given this breathalyzer test that went completely unchallenged. The state admitted in their responding argument just now that this was their strongest piece of evidence, their strongest piece of evidence. And for the defense not to be able to call it into question, not to be able to say, hey, there's some doubt here, not to be able to introduce that. That was the prejudice. That was what made this error not harmless for the defense. I have no further questions. Are there any other questions from the panel? No further questions. Okay. Thank you. We have completed the oral argument. The disposition will be rendered and filed in apt time. Mr. Clerk, will you please terminate and close out proceedings?